UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEREMY MAJOR,

    Petitioner,

                                 Case No. 8:10-CV-2780-T-30MAP
                                                  8:07-CR-361-T-30MAP

UNITED STATES OF AMERICA,

    Respondent.
_____/

**O R D E R**

This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-164), and the Government's response in opposition thereto (CV-D-7).

To put this matter in context, on May 5, 2007, petitioner was charged by way of a Complaint with possessing with the intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Attorney Matthew Farmer was appointed to represent Petitioner. On September 11, 2007, Petitioner was charged in a two-count Indictment with conspiracy to possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846, and distribution of 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and(b)(1)(A)(ii). Petitioner proceeded

to trial. On June 11, 2008, a jury found Petitioner guilty of both offenses. On August 14, 2008, the Court sentenced Petitioner to a term of imprisonment of 169 months.

Petitioner appealed alleging that this Court erred in denying his motion to suppress and that the Court erred in imposing a sentence based on more than five kilograms of cocaine. Petitioner's conviction and sentence were affirmed on appeal. United States v. Major, 341 Fed. Appx. 549 (11th Cir.) (per curiam), cert. denied, 130 S.Ct. 1031, 175 L.Ed.2d 631 (2009).

Petitioner timely filed his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 by placing his § 2255 motion in the prison mailing system on December 7, 2010. On December 15, 2010, he was transferred to the Bahamas pursuant to the Convention of the Transfer of Sentenced Persons. In his motion, Petitioner raises multiple claims of ineffective assistance of counsel including that his counsel was ineffective in failing to: (1) move to suppress evidence unlawfully obtained through confidential informant Curtis Saunders; (2) object to the Court's consideration of relevant conduct in determining Petitioner's base offense level; and (3) object to or correct the false testimony of Curtis

Saunders. Petitioner also claims prosecutorial misconduct and that the Court erred in considering conduct not relevant to the conspiracy charged in the Indictment.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In order to succeed under the <u>Strickland</u> test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. <u>Id.</u> at 687.

The first prong of the <u>Strickland</u> test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. <u>Id.</u>

A counsel's performance is deficient if, given all the circumstances, his performance falls outside of accepted professional conduct. <u>Strickland</u>, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential,"

and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510

(11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With the foregoing standard in mind, the Court turns to Petitioner's claims.

**1. Relevant Conduct**

Petitioner first claims that the Court lacked jurisdiction to take into account the relevant conduct associated with his crime and that his counsel was ineffective in failing to object at the sentencing. Petitioner specifically claims that his sentence should have been based on 500 grams or more of cocaine and that the other drugs should not have been used in calculating his sentence because they were not part of the same course of conduct.

The Probation Office recommended in the Presentence Investigation Report, based on relevant conduct, that Petitioner be held accountable for 54 kilograms of cocaine. (PSI ¶ 9.) Attorney Farmer objected to the recommendation both prior to and at the sentencing hearing. At sentencing, attorney Farmer posed an objection based on Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004). Attorney Farmer argued that the grand jury and the petit jury found the weight involved in the offense was more than 500 grams of cocaine and that in order for

Petitioner to be held responsible for more than five kilograms of cocaine, the grand jury must have charged that and the trial jury must have so found beyond a reasonable doubt. (CR-D-133, p. 3.) Attorney Farmer therefore contended that the ceiling drug quantity for which Petitioner could be held accountable was less than five kilograms, and as such, Petitioner should have a base offense level of 30. (Id. at p. 3-4.)

The Government argued that the additional weight of approximately 54 kilograms was appropriately added under the relevant conduct guideline, U.S.S. G. § 1B1.3, and was supported through the testimony of witnesses at trial as well as through Petitioner's post-Miranda statement. The Government continued that Apprendi would only be violated with the statutory maximum exceeded 40 years. (Id. at p. 4.)

Mr. Farmer responded:

> The probation officer did an intelligent job of analyzing my objection and found that as long as it does not exceed 40 years, the sentence, there would be no violation of Apprendi. My position is that Blakely, the Blakely decision puts that argument to rest without any doubt because Blakely extended Apprendi and said that there is Apprendi violation even when the statutory maximum is not increased and that's why ultimately under Booker and Fanfan the Supreme Court held that the guidelines were merely advisory because Blakely held any increase in the sentence, even if it does not exceed the statutory

> maximum, any increase based on a sentencing factor that is not charged by a grand jury and found beyond a reasonable doubt by the trial jury has Sixth Amendment implications, that a grand jury must find it and the trial jury must find it beyond a reasonable doubt.
>
> So that's why I think Mr. Edwards and the Government's position, although pre-<u>Blakely</u> was the law, is no longer the law under <u>Blakely</u>, and that even if Mr. Major's sentence does not exceed 40 years, if he received a sentence based on more than five kilograms, that would be a violation of the Sixth Amendment because the grand jury did not charge and the trial jury did not find it beyond a reasonable doubt.

(<u>Id.</u> at p. 4-5.) The Court found the calculation was appropriate. (<u>Id.</u> at p. 5.)

On appeal, Petitioner argued that the Court erred at sentencing by basing his sentence on a drug quantity of more than 5 kilograms. The Eleventh Circuit found that Petitioner's sentence did not violate <u>Apprendi</u>. <u>Major</u>, 341 Fed. Appx. at 552. The Eleventh Circuit found Petitioner failed to object to the factual findings and thus admitted drug quantity. <u>Id.</u>

Given the Eleventh Circuit's decision, Petitioner is barred from re-raising the claim in his § 2255 motion. Specifically, "[t]he district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343

(11th Cir. 2000) (citing United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981)). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Nyhuis, 211 F.3d at 1343 (citation omitted); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994) ("prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding"); United States v. Johnson, 615 F.2d 1125, 1128 (5th Cir. 1980) ("[w]hen an issue has already been determined on direct appeal, a Court need not reconsider it on a Section 2255 motion"). Petitioner does not raise any new issue of fact or intervening change in law warranting relitigation of this issue. The Court therefore does not reconsider it.

Furthermore, Petitioner has not demonstrated that attorney Farmer's failure to object to the factual finding regarding drug quantity was unreasonable. As previously indicated, the finding regarding the drug quantity was supported by the trial testimony as well as by Petitioner's own post-Miranda statements. According to the PSI,:

> Major admitted that he had made several trips from the Bahamas to Miami with kilogram quantities of cocaine. He stated that airport employees in the Bahamas placed the cocaine into his checked baggage.

8

>  Major then distributed the cocaine to his customers in Pinellas or Pasco Counties. He stated that on a few of these trips Glinton drove him to the delivery sites. Major admitted that he traveled to the United States approximately 45 times carrying cocaine. Major indicated that one of the trips he carried 10 kilograms of cocaine. Therefore, using 1 kilogram quantity of cocaine for 44 trips, plus 10 kilograms for the other trip, Major distributed at least 54 kilograms of cocaine.

(PSI ¶ 9.)

At trial, Detective Walek testified regarding his interview of Petitioner. According to Detective Walek, Petitioner confessed to smuggling cocaine into the United States from the Bahamas for Aubrey Pratt or Riley Seymore. (CR-D-129, p. 67-71.) Petitioner admitted to doing 30 drug trips for Pratt and approximately 15 for Seymore. (Id. at p. 71). He told law enforcement the most quantity he ever transported in one trip was 10 kilograms. Id.)

As the drug quantity was determined based on Petitioner's own confession, Petitioner has not demonstrated that his counsel was ineffective in failing to object to the factual finding regarding the drug quantity based on relevant conduct. The Court notes that Petitioner was fully debriefed by law enforcement and received the benefit of the safety valve. (CR-D-133, p. 5-6.) Had attorney Farmer objected to the factual finding regarding the drug quantity, certainly

9

Petitioner's eligibility for safety valve would have been put at risk.

## II. Failure to Correct False Testimony

Petitioner next claims that Curtis Saunders falsely testified at trial that he was not promised anything in return for his testimony. Petitioner claims that Government's failure to correct the false testimony constitutes prosecutorial misconduct. He further claims his counsel was ineffective in failing to raise the issue during the trial or on direct appeal.

Neither of these claims has merit as Petitioner fails to demonstrate that Saunders falsely testified at trial. Saunders testified that he pled guilty to Federal drug charges pursuant to a written plea agreement. (CR-D-128, p. 211-12.) He explained that two of his charges were dropped in exchange for his entering a guilty plea. (Id. at 212; CR-D-129, p. 13.) Saunders admitted that, as part of his plea agreement, he agreed to cooperate with the Government and that his trial testimony was a part of his continued cooperation. (CR-D-128, p. 212-213.) Saunders also admitted that his 130-month sentence of incarceration in his own case was a result of his cooperation with law enforcement. (Id. at 213-14, 253.)

The prosecutor specifically asked, "Mr. Saunders, have any promises been made with respect to your testifying here today in terms of your sentence?" Saunders replied, "No, ma'am." (Id. at 214.) The prosecutor then asked, "Do you have any benefits that you hope to receive by testifying today?" Saunders responded, "Well, no, ma'am. I have to finish what I had started with this plea." (Id.) When the prosecutor asked, "[y]ou mean you had to comply with the plea agreement?," Saunders responded, "Yes, ma'am." (Id.) Saunders also testified that his plea agreement included a provision that he tell the truth and that his failure to do so could result in a perjury charge. (CR-D-129, p. 9.)

On cross-examination, defense counsel asked Saunders if he hoped to get a Rule 35 reduction in sentence by testifying, to which Saunders responded, "Well, everybody hopes to get – you know, go home sooner." (CR-D-128, at p. 252.) Defense counsel then asked, "also you want a sentence reduction, you want to get something below 130 months, right?" Saunders responded, "Well, I have to do what I'm doing because it's in my plea. So, if it comes, it comes. If it doesn't, it doesn't." Defense counsel asked, "But you're hoping by testifying here today that it will come, right?" Saunders

11

admitted, "Yeah, anyone that's incarcerated will hope that, yes, sir." (Id.)

The above testimony shows that Saunders admitted that he pled guilty pursuant to a written plea agreement and that his cooperation with law enforcement had already resulted in him receiving a lower sentence.[1] He also specifically admitted that he hoped that his testimony at Petitioner's trial would result in a further reduction in his sentence pursuant to Rule 35.

The Court instructed the jury that it must consider with more caution the testimony of some witnesses. (CR-D-87, p. 8.) The Court specifically instructed that:

> [A] paid informer, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because the witness wants to strike a good bargain with the Government.
>
> So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of

---

[1] Notably, while Saunders was sentenced on August 6, 2007 and received a downward departure based on his cooperation, Saunders' assistance to law enforcement was not limited to the case involving Petitioner and co-defendant Glinton. The record demonstrates that Saunders provided information to law enforcement regarding multiple individuals prior to his sentencing and was prepared to testify in other trials that were held prior to Petitioner's trial. (CR-D-129, p. 10.)

12

other witnesses.

(Id.) The Court also instructed the jury that "[t]he fact that a witness has been convicted of a felony offense, or a crime involving dishonesty or false statement, is another factor you may consider in deciding whether you believe that witness." (Id. at p. 6.)

Petitioner has not demonstrated that Saunders' testimony was false. As such, it was not unreasonable for his counsel to fail to raise the issue that Saunders had testified falsely. Furthermore, as Petitioner has not demonstrated that Saunders falsely testified, he has not shown prosecutorial misconduct in failing to correct Saunders' testimony. Petitioner therefore is not entitled to relief as to these claims.

### III.     Failing to Suppress Evidence

Petitioner's final claim is that his counsel was ineffective in failing to move to suppress evidence Petitioner alleges was unlawfully obtained through Curtis Saunders while Saunders was on bond. Petitioner claims that Saunders violated his bond conditions by unlawfully working as a confidential informant and, as such, his counsel should have moved to suppress all evidence obtained through Saunders'

illegal acts. In support of his claim, Petitioner asserts the following were conditions of Saunders' bond:

 (1) the defendant shall not purchase, possess, use, distribute or administer any controlled substance.

 (2) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

 (3) The defendant should notify pretrial release when questioned by law enforcement officer.

 (4) The defendant shall not enter into any agreement to act as an informer or special agent or law enforcement agency.

(CV-D-2, p. 9.)

There is absolutely no evidence that any of the foregoing bond conditions alleged by Petitioner were in fact placed upon Saunders. The January 5, 2007 Order of Release as to Curtis Saunders does not include any of the conditions alleged by Petitioner. (Case No. 8:06-Cr-505-T-23MSS, D-24.) At trial, Saunders testified that his conditions of release included mandatory drug testing, electronic monitoring and house arrest. (CR-D-129, p. 8.) Furthermore, Saunders' case file does not indicate that Saunders violated any of the bond conditions actually imposed. As Petitioner has failed to demonstrate that Curtis Saunders violated his conditions of bond, his attorney's failure to move to suppress evidence

based on such a violation was not unreasonable. Nor has Petitioner demonstrated any prejudice. As such, Petitioner is not entitled to any relief as to this claim.

It is therefore ORDERED that:

1) Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV-D-1; CR-D-164) is DENIED.

2) The Clerk is directed to enter judgment in favor of the Government and to CLOSE the civil case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, defendant "must demonstrate that

15

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this 20th day of April, 2011.

/s/ William Castagna
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE